UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEJAVONTE B.,

                                    Plaintiff,

    v.                                                     5:22-CV-1206 (TJM/ATB)

KILOLO KIJAKAZI,

                                    Defendant.
_____

KENNETH R. HILLER, ESQ., for Plaintiff
KRISTINA D. COHN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

      Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. Plaintiff did not consent to the jurisdiction of a Magistrate Judge (Dkt. No. 7), and this matter was therefore referred to me for Report and Recommendation by Senior United States District Court Judge Thomas J. McAvoy, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

      Plaintiff, born on October 23, 2001, protectively filed applications for Child Disability Benefits and Title XVI Supplemental Security Income ("SSI") on April 30, 2020, alleging disability beginning April 30, 2019. (Administrative Transcript ("T")

1

13, 54, 63, 324, 343).  Plaintiff's application was denied initially on September 1, 2020 (T. 81-83), and upon reconsideration on February 11, 2021 (T. 84-86).  On August 6, 2021, Administrative Law Judge ("ALJ") Jeremy Eldred conducted a hearing during which plaintiff, plaintiff's mother, and vocational expert ("VE") Melissa Fass-Karlin testified.  (T. 26-50).  On August 23, 2021, the ALJ issued an order denying plaintiff's claims, finding that plaintiff was not disabled prior to attaining the age of twenty-two years old and, thus, was not entitled to disabled adult child's benefits under Title II, and that he was not eligible for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act).  (T. 10-18).  This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on September 16, 2022.  (T. 1-3).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standards

To be considered disabled, an applicant, age 18 or older must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A), (a)(3)(C).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Social Security Act provides payment for disabled child's insurance benefits for a claimant who is 18 years old or older at the time of application, but establishes that he is under a disability that began before he attained the age of twenty-two. 42 U.S.C. § 402(d)(1)(B); 20 C.F.R. 404.350(a)(5). As with other Title II and Title XVI cases, the Commissioner has established a five-step procedure for evaluating disability claims. See 20 C.F.R. §§ 404.1520, 416.920.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents him from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

B.   **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

Plaintiff was seventeen years old on the alleged disability onset date, but was eighteen years old as of the date of his applications. (T. 13, 54, 63). Plaintiff lived at home with his family and did not have any employment history. (T. 30, 31). He graduated from high school with special education services. (T. 30, 446). He held an associate degree, and planned to pursue a bachelor's degree. (T. 30-31).

Plaintiff alleged that he is unable to work because he "would get stressed out real easily" and "may script[1] at times[.]" (T. 31). Plaintiff was diagnosed with a mild autism spectrum disorder and had difficulty making eye-contact. (T. 34, 474). Plaintiff testified to being stressed or scared by loud noises, people yelling, and the improper use of doorbells. (T. 35). He also testified that he becomes angry or mean when he is stressed but can "find ways just to calm [himself] down and just try and let the moment pass." (T. 35). Plaintiff's mother testified that he has poor judgement, and that he has been a victim to internet scams. (T. 42-43). She also testified that plaintiff lacks social skills because he does not say hello to people at church or her friends when they visit their house. (T. 39). However, plaintiff testified that he socializes with his friends every couple of months. (T. 33).

## IV. THE ALJ'S DECISION

The ALJ first determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 30, 2019. (T. 13). Next, the ALJ found that plaintiff's autism spectrum disorder was a severe impairment. (*Id.*). At the third step, the ALJ determined that plaintiff's

---

[1] Plaintiff described "scripting" as reciting lines from movies or television shows. (T. 31).

5

impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id*).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels, except that he can understand, remember, and carry out only simple and routine tasks, can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks, can tolerate only brief and superficial interaction with the public, and can appropriately adapt to ordinary changes in an unskilled occupation that involves only simple and routine tasks.

(T. 14).

In making the RFC determination, the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 14). The ALJ further noted that he fully considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. (*Id.*). After considering plaintiff's statements regarding his symptoms, along with the other evidence of record, the ALJ concluded "the evidence does not fully support the allegations regarding the extent of functional limitations cause by the [plaintiff's] symptoms." (T. 15). The ALJ then determined that plaintiff had no past relevant work and at least a high school education. (T. 17). However, the ALJ did determine that there were other jobs that exist in significant numbers in the national economy that plaintiff could perform. (*Id.*). Accordingly, the ALJ ruled that plaintiff was not disabled from April 30, 2019, through the date of the decision. (T. 18).

## V.     ISSUES IN CONTENTION

Plaintiff argues that remand is warranted "because the ALJ developed an RFC finding that conflicts with the opinion of Dr. Grassl, despite finding the opinion 'persuasive'".  (Plaintiff's Brief ("Pl.'s Br.") at 7-16) (Dkt. No. 10).  Defendant contends that the Commissioner's determination should be affirmed because the ALJ's RFC was supported by substantial evidence.  (Defendant's Brief ("Def.'s Br.") at 4-9) (Dkt. No. 11).  For the reasons stated below, the court recommends that plaintiff's motion be denied, defendant's motion be granted, and the Commissioner's decision be affirmed.

## DISCUSSION

## VI.    RFC/EVALUATING MEDICAL EVIDENCE

### A.     Legal Standards

#### 1.     RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

7

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules*

8

*Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

    Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

9

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B. Analysis

Plaintiff argues the ALJ erred "because the ALJ developed an RFC finding that conflicts with the opinion of Dr. Grassl, despite finding the opinion 'persuasive.'" (Pl.'s Br. at 7). Consultative examiner Dr. Grassl examined and completed a psychiatric evaluation of plaintiff on December 27, 2019. (T. 472-75). During the examination, Dr. Grassl observed that plaintiff had appropriate eye contact; his thought process was coherent and goal directed; and his judgment was fair. (T. 473). Dr. Grassl diagnosed plaintiff with a mild autism spectrum disorder. (T. 474). He further opined plaintiff would be "[m]oderately limited in his ability to interact adequately with supervisors, co-workers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; and regulate emotions, control behavior, and maintain well-being." (T. 474). Dr. Grassl also opined plaintiff would be "mildly limited in his ability to understand, remember, and apply complex directions and instructions." (T. 474).

The ALJ found Dr. Grassl's opinion persuasive because it was "well supported by the detailed findings from [his] mental status examination of the [plaintiff]." (T. 16). The ALJ noted that Dr. Grassl's opinion was consistent with those of other medical sources of record, including state agency medical consultants, Dr. Hennessey and Dr. Momot-Baker. (T. 16). The ALJ also noted Dr. Grassl's opinion was "consistent with other evidence in the record, including the [plaintiff's] lack of mental health treatment and ability to successfully earn a college degree." (T. 16).

Plaintiff argues "the ALJ erred by failing to explain why he did not incorporate all of the moderate limitations opined by Dr. Grassl into the RFC." (Pl.'s Br. at 7). With respect to sustaining concentration and performing tasks at a consistent pace, the RFC notes plaintiff can only "concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks[.]" (T. 14). This indicates the ALJ considered plaintiff's ability to sustain concentration and perform tasks at a consistent pace when creating his RFC. The ALJ noted that Dr. Grassl found plaintiff's attention and concentration were only mildly limited. (T. 15). The ALJ also noted that Dr. Momot-Baker concluded that plaintiff's "occasional lapses in focus and motivation . . . would not be expected to substantially detract from the [plaintiff's] ability to complete routine tasks at a reasonable pace." (T. 16). Furthermore, the ALJ noted plaintiff was able to complete a two-year degree at community college and was planning on attending classes at a university. (T. 15).

Moreover, "having a moderate limitation in a mental functional area does not rule out a claimant's ability to do basic work activities." *Edward S. v. Comm'r*, No. 5:20-CV-1550 (TWD), 2022 WL 846315, at *8-9 (N.D.N.Y. Mar. 22, 2022) (citing *Zabala*

11

*v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)). *See also Melissa L. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6667, 2022 WL 593452, at *6 (W.D.N.Y. Feb. 28, 2022) (citing cases). The only jobs proposed by the VE and included in the ALJ's decision were "unskilled" based on the ALJ's hypothetical. (T.). A moderate limitation in work related functioning does not prevent a plaintiff from performing unskilled work. *Shawn V. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0997, 2021 WL 3022295, at *4 (W.D.N.Y. July 16, 2021) (citing *Zabala v. Astrue*, 595 F.3d at 410).

Plaintiff also argues that Dr. Grassl's moderate limitation in maintaining pace indicates that "[p]laintiff would likely be off-task 1/3 or 33% of the workday." But plaintiff has not provided any medical records or opinion evidence to support this assertion. *See Lowry v Comm'r of Soc. Sec.*, No. 1:15-CV-1553(GTS/WBC), 2017 WL 1290685, at *4-5 (N.D.N.Y. Mar. 16, 2017), *report and recommendation adopted*, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017) (rejecting plaintiff's argument that a moderate limitation in ability to maintain a routine translated to an opinion that plaintiff would be off-task 20% of the workday or absent more than four days per month). A 'moderate' limitations in plaintiff's ability to maintain a schedule is consistent with the ability to perform substantial gainful activity, and would at most, be harmless error. *See Bradley W. v. Comm'r of Soc. Sec.*, No. 19-CV-1217(ATB), 2020 WL 5848833, at *12 (N.D.N.Y. Oct. 1, 2020); *Melisa G. v. Berryhill*, No. 18-CV-0508(DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (noting that "moderate limitations are not prohibitive of performing unskilled work").

Plaintiff also argues the RFC does not account for plaintiff's moderate limitations in regulating emotions, controlling behavior, and maintaining well-being. (Pl.'s Br. at

12

14-16). The ALJ noted Dr. Frechette's observation that plaintiff had "no features of an anxiety disorder or depression." (T. 15 (citing T. 569)). Plaintiff alleges that Dr. Grassl's moderate limitation "is likely to equal or result in off-task time[,]" but does not support this conclusory allegation with any support or reference to medical opinions or record. (Pl.'s Br. at 14). In fact, Dr. Grassl concluded that plaintiff's mental impairments do "not appear to be significant enough to interfere with the [plaintiff's] ability to function on a daily basis." (T. 474).

The RFC's limitation to simple and routine tasks and toleration of only brief and superficial interaction with supervisors or co-workers adequately addresses the moderate limitations in regulating emotions, controlling behavior, and maintaining well-being. *Walter W. v Comm'r of Soc. Sec.*, No. 1:21-CV-00135, 2023 WL 2188759, at *2 (W.D.N.Y. Feb. 23, 2023) ("[T]he RFC's limitations to only occasional interaction with the public, supervisors, and co-workers and to only 'low-stress'; jobs adequately addressed the moderate limitations."); *Susan B. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 107, 117 n. 3 (W.D.N.Y. 2021) (holding moderate limitations with regulating emotions, controlling behavior and maintaining well-being was consistent with RFC for unskilled work involving limited interaction with others); *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 483 (W.D.N.Y. 2021) (holding moderate limitations with regulating emotions, controlling behavior, and maintaining well-being was consistent with RFC for simple, routine and repetitive tasks, making simple work-related decisions, and occasionally interacting with others); *Jacqueline L. v. Comm'r*, 515 F. Supp. 3d 2, 12 (W.D.N.Y. 2021) (holding moderate limitations with regulating emotions, controlling behavior, and maintaining well-being was consistent with RFC

13

for low-stress work involving limited contact with others); *Rice v. Comm'r of Soc. Sec.*, No. 18-CV-1369, 2020 WL 4283894, at *4 (W.D.N.Y. July 27, 2020) (holding claimant would not be precluded from performing unskilled work in a low stress environment with no supervisory duties, no independent decision-making, no strict production quotas, minimal changes in work routine, and only occasional interaction with supervisors, coworkers, and the public even if he had moderate-to-marked limitations in the area of moderating his emotions and controlling his behavior). Thus, the court does not find the ALJ erred in making his RFC determination as he properly incorporated Dr. Grassl's moderate limitations.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be **DENIED;** and it is further

**RECOMMENDED,** that defendant's motion for judgment on the pleadings (Dkt. No. 11) be **GRANTED**; and it is further

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 4, 2023

                                                Andrew T. Baxter
                                                U.S. Magistrate Judge